IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

KENDRA MICHELLE ELEY,

                Plaintiff,

v.                                     Docket No. 4:245-CR-00077

UNITED STATES OF AMERICA,

                Respondent.


### MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(l)(A) AND SECTION 603(b) OF THE FIRST STEP ACT WITH MEMORANDUM OF LAW

COMES NOW, Kendra Michelle Eley, by and through counsel, pursuant to this Court's Orders and hereby files this memorandum in support of Ms. Eley's motion for compassionate release in accordance with Section 603(b) of the First Step Act, and as ordered by this Court. Should the Court, after its own review of the record, determine that briefing on additional issues is necessary, counsel stands ready to provide that briefing.[1] Ms. Eley respectfully moves this Court for an order reducing her sentence based on "extraordinary and compelling reasons," pursuant to the recently amended 18 U.S.C. § 3582(c)(1)(A)(I), and order the remainder of her sentence to be served on home confinement or, in the alternative, issue a non-binding recommendation that the BOP transfer her to home confinement for the duration of her sentence, pursuant to 18 U.S.C. § 3624(c), the CARES Act, and Attorney General Barr's April 3, 2020 and April 22, 2020 Memoranda.

---

[1] Defense counsel hereby incorporates Kendra Eley's pro se motion by this reference. ECF No. 65.

<u>FACTUAL BACKGROUND</u>

On November 12, 2024, Ms. Eley was named in a six count Indictment returned by the Grand Jury for the Eastern District of Virginia.  On March 6, 2025, in accordance with the terms of the written Plea Agreement, Ms. Eley appeared before The Honorable Raymond A. Jackson, and pled guilty to Count Three, False Claims, in violation of 18 U.S.C. §§ 287 and 2 and Count Five, Engaging in Monetary Transactions in Criminally Derived Property, in violation of 18 U.S.C. §§ 1957 and 2.  On July 15, 2025, Ms.Eley was sentenced on Count 3 to a term of imprisonment of thirty-six months, supervised release of three years, a special assessment of $100. 00 and restitution in the amount of $649,050.00.  On Count 5, Ms. Eley was sentenced to thirty-six months of imprisonment to run concurrent with Count 3, three years of supervised release to run concurrent with Count 3, and a special assessment of $100.00.

On October 14, 2025, Ms. Eley filed her pro se Motion for Sentence Reduction, Modification and/or Reconsideration. ECF No. 65.

<u>ARGUMENT</u>

In December 2018, President Trump signed the First Step Act of 2018 into law. Pub. L. 115-391, 132 Stat. 5194. Prior to the Act's passage, Congress had tasked the Bureau of Prisons with bringing "extraordinary and compelling" cases to the district court for adjudication under § 3582(c)(l)(A). Under the First Step Act, Congress amended § 3582(c)(l)(A) to remove the Bureau of Prisons from its former role as a gatekeeper over compassionate release petitions and authorized defendants to file motions for sentence modifications on their own behalf, so long as they first apply to the BOP. *United States v. McCoy,* 98 I F.3d 271, 276 (4th Cir. 2020). The purpose of Section

603(b) of the First Step Act was to "Increase the Use and Transparency of Compassionate Release," and *"expand the discretion of the courts to consider leniency." Id.* (internal citations and punctuation omitted) (emphasis added).  The relevant provisions of 18 U.S.C. *§* 3582(c)(l)(A) now provides that a court may not modify a term of imprisonment once it has been imposed except that in any case

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable. if it finds that-
>
> > (i) extraordinary and compelling reasons warrant such a reduction; ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(l)(A)(i).[2]

However, the Fourth Circuit holds that "[a]s of now, there is no Sentencing Commission

---

[2]Subsection (ii), which applies only to defendants who are "at least 70 years of age, [and] ha[ve] served at least 30 years in prison," does not app1y in this case. Rather, the request for a reduction in sentence is brought under§ 3582(c)(l)(A)(i).

policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under§ 3582(c)(J )(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *United States v. McCoy,* 981 F.3d 271,283 (4th Cir. 2020). The First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Accordingly, it is the Court, not BOP, that determines whether there are extraordinary and compelling reasons warranting relief under 18 U.S.C. *§* 3582(c)(l)(A). *Id.* at 284.  Therefore, the Court determines three things for a § 3582(c)(l )(A) motion filed by a defendant: first, whether he has satisfied § 3582(c)(l)(A)'s nonjurisdictional 30-day exhaustion provision (or whether the government has waived exhaustion); second, whether there are "extraordinary and compelling reasons" to reduce the sentence; and third, whether a sentence reduction is consistent with the §3553(a) factors. Ms. Maness respectfully submits that all three requirements are met here.

The First Step Act allows defendants to move for a reduction of sentence based upon extraordinary and compelling reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" First Step Act of 2018, § 603(b), Pub. L. 115- 391, 132 Stat. 5194, 5239 (Dec. 21, 2018). By providing this exceptionally short 30-day waiting period before a court may act on a defendant's motion for compassionate release, Congress plainly sought to expedite judicial consideration of such motions and expedite defendants' access

to the courts. See, e.g., *United States v. Haney*, 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020).

Courts in this District and throughout the country have found that the exhaustion requirement is satisfied upon the passage of thirty days since a prisoner's request for compassionate release, regardless of whether the BOP issues a denial of the request in the meantime. See *United States v. Wilson*, Case No. 2:11cr180, Dkt. No. 663, at 4-5 (E.D. Va. May 29, 2020) (finding exhaustion satisfied where defendant submitted a request for compassionate release to the warden on March 27, 2020, which was subsequently denied within the 30 days of the request on April 10, 2020).[3]

While the statute includes an administrative prerequisite, it does not expressly prohibit judicial waiver, nor does it state that exhaustion is jurisdictional. Numerous courts have held that § 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule, not a jurisdictional bar, and therefore may be waived or excused in appropriate circumstances. Courts routinely recognize exceptions where rigid enforcement of exhaustion in such cases would elevate form over substance and conflict with the remedial purpose of the First Step Act. *United States v. Saladino*, 7 F.4th 120 (2nd Cir. 2021).

Ms. Eley sought to remedy her situation administratively by petitioning the Warden of

---

[3]See also *United States v. Haney*, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) ("Rather, it requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his petition on the warden of the facility before filing a motion."); *United States v. Kriglstein*, 1:16cr663, ECF No. 55 (D.N.M. Apr. 23, 2020) (same); *United States v. Spears*, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (a defendant can file after 30 days without full administrative exhaustion); *United States v. York*, 2019 WL 3241166 (E.D. Tenn. July 18, 2019) (same); *United States v. Fields*, 3:12cr00022, ECF No. 223 (D. Alaska May 6, 2020).

Alderson FPC on October 21, 2025, to file a motion for compassionate release on her behalf.  The warden has failed or refused to respond to her request within thirty days.  Accordingly, Ms. Eley has satisfied the exhaustion requirement contained in 18 U.S.C. § 3582(c), and her motion is ripe for review.

Once a defendant has exhausted her administrative remedies, the Court must consider whether "extraordinary and compelling reasons warrant such a reduction" and whether it is "consistent with applicable policy statements issued by the Sentencing Commission." The relevant policy statement, Section 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under §3582(c)(1)(A) may be ordered and provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a reduction.  Courts across the nation, have held that 1B1.13 sentencing guidelines are not applicable to a motion brought by a defendant for a reduction in sentence pursuant to 18 U.S.C. 3582(c)(1)(A). This view was affirmed in *United States v. Booker*, 976 F.3d 228 (2nd Cir. 2020).

The Courts reasoned that the language of 1B1.13 - language that has not been updated since the passing of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 - addressed and applied only to sentencing reduction motions initiated by the BOP. The Court made clear that the District Court was not constrained by the narrow grounds for granting compassionate release in 1B1.13. Courts have declared unequivocally that "District Courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before the Court in motions for compassionate release" and that "neither application note 1(D), nor anything else in the now-outdated version of Guideline 1B1.13, limits the District Courts

-6-

discretion."

Based on the Court's decision regarding 1B1.13, this Court is allowed to entertain any condition that this Court may find to be extraordinary and compelling. "The Court need not find a single dispositive circumstance to determine that extraordinary and compelling reasons exist; rather, it may consider whether the totality of the circumstances justify such finding." see *United States v. Piggott*, 94-CF-417 (SHJ) 2022 U.S. Dist. LEXIS 5293, (SDNY Jan. 12, 2022).

District courts are authorized to grant sentence reductions for "extraordinary and compelling reasons," if consistent with the § 3553(a) factors. 18 U.S.C. §§ 3852(c)(l)(A)(i), 3582(c)(l)(A). By providing this exceptionally short 30-day-waiting period, Congress plainly sought to expedite judicial consideration of such motions and expedite defendants' access to the courts. See, e.g., *United States v. Haney*, 19-cr-541, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020).

Ms. Eley is thirty-seven years of age and is the mother of three children. The children's fathers are either deceased or not actively engaged in their lives. Since Ms. Eley's incarceration, her children have been living with their maternal grandmother, Cynthia Spencer. Ms. Eley's daughter, K.V. age four, was diagnosed in August of 2025 with Autism Spectrum Disorder. K.V. is classified as requiring Level 3 supervision, as she is non-verbal and thus has significant challenges with communication. K.V. requires a strong need for routine, has high sensory sensitivity, and requires ongoing, intensive support in her daily life. K.V. requires constant supervision because she tends to climb and constantly place objects in her mouth which may become choking hazzards. K.V.'s inability to communicate or comprehend causes her to act out and she becomes frustrated which causes tantrums multiple times a day.

-7-

Mrs. Spencer suffers from diabetes which is making it more difficult to provide the day to day care for the children. The additional stress of managing a four year old with ASD requiring Level 3 support has impacted Mrs. Spencer's health. The additional stress has resulted in her blood sugar levels to drop frequently. When Mrs. Spencer's blood sugar drop causes her to lose all functions in her body; her vision gets blurry; and she's unable to temporarily walk and talk.

Caregivers play a vital role in the upbringing and well-being of children. They provide love, care, and guidance, ensuring that children grow up in a nurturing environment. However, circumstances can arise where these caregivers face incapacitation due to illness, injury, or other unforeseen events. In such cases, it becomes crucial to extend compassionate relief to these individuals, considering the significant impact it has on the children under their care.

First and foremost, the incapacitation of a caregiver can disrupt the stability and routine that children rely upon for their emotional and physical development. Children thrive in an environment where they feel safe, secure and loved. When a caregiver is unable to fulfill their responsibilities due to incapacitation, children may experience heightened anxiety, stress and a sense of instability. Compassionate relief measures can help alleviate these negative effects by ensuring that alternative care arrangements are made promptly, minimizing any disruption to the child's well-being.

Moreover, the absence of a capable caregiver can lead to a decline in the child's overall quality of life. Caregivers are not only responsible for meeting the basic needs of children, such as food, shelter and healthcare, but they also provide emotional support and guidance. Without a caregiver's presence, children may struggle to cope with their emotions, face difficulties in

maintaining their physical health and experience a decline in their academic performance. Compassionate relief measures can help bridge this gap by providing temporary support or assistance to ensure that the child's needs are met during the caregiver's incapacitation.

It is essential to recognize that the well-being of children is intrinsically linked to the well-being of their caregivers. When a caregiver is incapacitated, they may face financial hardships, emotional distress, and a sense of helplessness. These challenges can further exacerbate the caregiver's condition, hindering their ability to recover and resume their caregiving responsibilities. By offering compassionate relief, we not only support the caregiver but also indirectly contribute to the child's well-being by facilitating the caregiver's recovery process.

Since Ms. Eley's incarceration, Mrs. Spencer's diabetes symptoms have become more severe. K.V.'s condition requires constant supervision which is taking a toll on Mrs. Spencer both mentally and physically. The added stress of caring for K.V. has caused Mrs. Spencer's diabetes symptoms to worsen. Accordingly, Mrs. Spencer's failing health will prevent her from continuing to care for her grandchildren.

Where there are "extraordinary and compelling reasons," § 3582(c)(I)(A)(i), a "court may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(I)(A). Under § 3582(c), the default presumption is that the court cannot modify a previously imposed term of imprisonment, unless the defendant presents extraordinary and compelling reasons that warrant such a reduction. Once the defendant makes that showing,

however, "the presumption then effectively shifts in favor of his release, and the court must determine whether any of the purposes of punishment set forth in section 3553(a) require keeping the defendant incarcerated nevertheless; that is, notwithstanding the extraordinary and compelling circumstances that would otherwise justify releasing him." *United States v. Greene*, 2021 WL 354446, at *16 (D.D.C. Feb. 2, 2021).

In evaluating a motion for compassionate release, the Court is not simply reweighing the sentencing factors as they existed at the time of sentencing. Rather, the Court has full discretion to determine whether there are "extraordinary and compelling reasons" for release, and it must consider post-offense developments under 18 U.S.C. § 3553(a), which provide "the most up-to-date picture" of Ms. Eley's history and characteristics. See *Pepper v. United States*, 562 U.S. 476, 490-93 (2011).  Ms. Eley's records show she has only one reported disciplinary infraction related to her uniform and she has availed herself to the financial literacy program.[4]  "[A]lthough [a] defendant's federal sentence may have been appropriate at the time it was imposed, the Court's analysis is different in current circumstances." *United States v. Lee*, 2020 WL 3422772, at *5 (E.D. Va. June 22, 2020). In the age of COVID-19, "sufficient but not greater than necessary" takes on new meaning, and particular significance, for vulnerable at-risk inmates. That is, "[t]o avoid a sentence that was sufficient but no greater than necessary from becoming one immeasurably greater than necessary," the compassionate release of vulnerable inmates like Ms. Eley is appropriate. *United States v. Park*, 2020 WL 1970603 at *5 (S.D.N.Y. Apr. 24, 2020) (emphasis added) (internal citation omitted).

---

[4]Bureau of Prison records are attached hereto as Exhibits 'A'.

Since her incarceration, Ms. Eley has completed the five week financial literacy program. Ms. Eley has formulated a release plan that will address the care of her children and ensure her successful and healthy transition back to the community. Ms. Eley will reside at her home located at 1608 Maple Avenue in Portsmouth, Virginia. Additionally, Ms. Eley intends to continue her education and has secured lawful full-time employment upon her release at Providential Care Services, LLC, in Portsmouth as an office administrator for a disability services provider which will allow her to provide for her family and to begin making regular payments towards the court ordered restitution.

<u>CONCLUSION</u>

After evaluation of the defendant's pro se motion and the relevant factors, undersigned counsel requests that this Court grant Ms. Eley's compassionate release. In the alternative, counsel respectfully requests that the Court issue a non-binding recommendation that BOP transfer Ms. Eley to home confinement.

Respectfully Submitted,

Kendra Michelle Eley

_____/s/_____

Michael P. Jones
Attorney for Defendant
Virginia State Bar No. 36164
MICHAEL P. JONES, P.C.
11847 Canon Boulevard, Suite 1
Newport News, VA 23606
(757) 873-2333
(757) 873-5522 fax
mjones@michaelpjonespc.com

-11-

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of February, 2026, a true and correct copy of the above and foregoing Motion for Compassionate Release was electronically filed with the Clerk of Court using CM/ECF system, which will send an electronic notification of such filing to the following:

David M. Coleman
Assistant United States Attorney
Criminal Division - Newport News
One City Center
11815 Fountain Way
Suite 200
Newport News, VA 23606
757-591-4028
Email: mack.coleman@usdoj.gov


_____/s/_____
Michael P. Jones
Attorney for Defendant
Virginia State Bar No. 36164
Michael P. Jones, P.C.
11847 Canon Boulevard, Suite 1
Newport News, VA 23606
(757) 873-2333
(757) 873-5522 -  fax
mjones@michaelpjonespc.com